## Commonwealth v. Campbell, Appellant.

Argued December 10, 1934.

Before TREXLER, P. J., KELLER, CUN-NINGHAM, BALDRIGE, STADTFELD, PARKER and JAMES, JJ.

*William A. Gray,* with him *Sumner V. Hosterman* and *John E. Malone,* for appellant.

*Paul A. Mueller,* District Attorney, and with him *William B. Arnold,* Assistant District Attorney, for appellee.

OPINION BY BALDRIGE, J., January 4, 1935:

This appeal of Arthur E. Campbell followed his conviction for the crime of false pretense.

The Commonwealth's testimony discloses that in 1933 William E. Williams and William T. Kline were partners in a finance company. Kline suggested to David C. Marburger, an employee and former printer, that he put in a bid to the county commissioners of Lancaster County for the printing of certain primary election material. Marburger having agreed to this plan, Kline went to see Campbell, deputy controller of Lancaster County, and was told by him that Marburger could have the bid if he would give William F. Paes, a clerk in the county commissioners' office, and himself each the sum of $150. Campbell gave directions that Marburger should present a blank bid which he would read last and that he would make it lower than any other bid. Accordingly, Kline, Marburger and Williams prepared a blank bid at the office of the finance company. As the specifications for bidding required that a certified check for ten per cent

of the amount bid must accompany all proposals, Williams signed a check of the finance company in blank and gave it to Marburger, who filled it in in the sum of $1,000, which was much in excess of the amount of money they had in bank, and placed on the check a fictitious and fraudulent certification. Marburger gave the bid and the falsely certified check to Kline, who delivered them to the office of the county commissioners. Campbell thereafter reported to Kline that the only bid received was Marburger's, and that he had opened and announced it as being in the sum of $670, which figures he inserted. Evidently, this insertion was made after the reading of the bid which the defendant said he would submit ''in blank.'' The bid was placed in an envelope and opened in the presence of two county commissioners, but was not actually seen at that time by them. Kline told Marburger of his talk with Campbell and Marburger stated he could not pay the $300 to Campbell and Paes unless he got a greater sum than $670 for the printing contract. Kline conveyed the message to Campbell and a short time thereafter the latter informed Kline that he had raised the bid to $870 and had made arrangements whereby Marburger could put in a bill for extras for $150, but under that provision Campbell demanded $175 apiece for himself and Paes. Later that same afternoon the county commissioners for the first time saw the bid, which had been increased to $870, and awarded the contract to Marburger. The work was completed, and a bill was presented for $1,030, which included extras. Campbell, having obtained a voucher and a check to the order of Marburger, sent word through Kline for Marburger to come out to his house to sign them and then he (Campbell) would get the check cashed. The signature was obtained on both instruments and remained in Campbell's possession until the next morning when he told Kline to have the check cashed as he could not get

away from the office. The proceeds thereof were distributed and $450 was paid to Campbell, which included the $350 he and Paes were to receive and $100 for a bad check which Marburger had given to a Mr. Diehm.

Campbell, Kline, Williams and Marburger were indicted at the 1933 December sessions for false pretense, conspiracy and violation of certain election laws. Kline and Marburger pleaded guilty.

The indictment for false pretense was drawn under the Act of March 31, 1860, P. L. 382, §111, which, as amended by the Act of April 30, 1925, P. L. 386, §1 (18 PS §2631), provides: "If any person shall, by any false pretense, obtain the signature of any person to any written instrument . . . . . . with intent to cheat and defraud any person of the same, or if any person being an officer, manager, agent, employee of or in any way interested in any corporation, partnership, or association, shall by false pretense knowingly and with intent to defraud, procure, obtain, or aid, assist, or abet and obtain from any other person, corporation, or association any chattels, moneys, or valuable securities for such corporation, partnership, or association of which he is an officer, manager, agent, employee, or in which he is in any way interested, every such offender shall be guilty of a misdemeanor." It will be noted that in order to bring this case within the statute, proof of the following is requisite: (1) false pretense; (2) obtaining a signature; (3) obtaining moneys; (4) an intent to defraud.

The appellant and Williams filed demurrers and motions to quash the indictments which were argued on the 20th of February, 1934. On that date a motion to amend the indictments was made by the district attorney.

The first count in the indictment, with which we are now concerned, charged that the appellant "unlaw-

fully, knowingly and designedly did falsely pretend to the county commissioners of the County of Lancaster that the bid of David C. Marburger upon a public contract ...... was a good and lawful bid according to law and a bid which might legally and lawfully be accepted by the aforesaid county commissioners, and the aforesaid contract awarded thereon unto David C. Marburger; whereas in truth and in fact the bid ...... was not a good and lawful bid according to law and was not a bid which might legally and lawfully be accepted by the aforesaid county commissioners and the aforesaid contract awarded thereon unto David C. Marburger, *because said bid was submitted in blank and without the amount of the bid contained therein and because said bid was accompanied by a check falsely made to appear as a certified check,* as they, the said William T. Kline, Arthur E. Campbell and William E. Williams, then and there well knew and by color and means of which false pretense and pretenses they, the said William T. Kline, Arthur E. Campbell and William E. Williams, then and there unlawfully, knowingly and designedly obtained and secured the award of *and the signatures to* the said contract by the county commissioners of the County of Lancaster unto David C. Marburger, and then and there unlawfully, knowingly and designedly as a result thereof, obtained from the County of Lancaster the sum of one thousand thirty ($1,030) dollars.'' The amended portion of the indictment is italicized.

The appellant's first contention is that the original indictment was insufficient at law to support a conviction and that the amendment should be regarded as a nullity as it was filed without permission of the court and without notice to counsel for defendant, and that it is an amendment in substance and not merely to the form of the indictment. While the original indictment might have been drawn with greater pre-

cision, we do not concede that it was insufficient. Nor are we of the opinion that the amendment essentially changed the substance of the charge in the first count of the indictment, so that it was necessary to resubmit it to the grand jury. The law does not require that an indictment contain full and specific details as in a bill of particulars. Under the 11th section of the Act approved March 31, 1860, P. L. 427 (19 PS §261), if the crime charged is substantially in the language of the act of assembly, as it was here, it is sufficient. The purpose of this act and the marked tendency of modern decisions is to accomplish substantial justice by ascertaining whether defendant is guilty or innocent, rather than to recognize the force of legal niceties and technicalities: Com. v. Spadaro, 94 Pa. Superior Ct. 535, 539; Com. v. Frey, 50 Pa. 245. Of course, the indictment must be drawn with reasonable clearness and certainty to show the substance, time and place of the alleged offense, so that a defendant may be informed in an intelligent manner of what he is called upon to answer and protected against a second conviction of the same offense: Seifried v. Com., 101 Pa. 200; Com. v. Romesburg, 91 Pa. Superior Ct. 559, 562. ''The particularity demanded, however, is only of the degree required in declarations,—'certainty to a certain intent in general;' or that which, upon a fair and reasonable construction, may be called certain, and in which the averments of matters obviously arising from implication is unnecessary: [citing cases].

''Whether the indictment, in the case before us, might not have been framed with greater precision and certainty, on the points embraced in the motion to quash, need not be considered; we have only to determine whether it sets forth, with the requisite certainty, the essentials of the offense which it is dessigned to charge'': Com. v. White, 24 Pa. Superior

Ct. 178, 180. See, also, Com. v. Frey, supra (50 Pa. 245). This indictment stood these legal tests.

True, there was no formal decree allowing the amendment, but the opinion of the court below, filed March 9, 1933, overruling the demurrer and discharging the rule to quash, clearly indicates that the motion was granted. The trial was not had until the following June, so that the defendant had ample notice of the amended indictment and of the nature of the charge against him. As was said in Com. v. Fahey, 113 Pa. Superior Ct. 598, 603, 173 A. 854, where we sustained the court below in refusing to quash an indictment: "There can be no reasonable doubt that the defendant understood fully the offense with which he was charged in the indictment."

Nor do we think there is merit to the argument that the count of false pretense was defective in that it did not charge the representation of an existing fact. The reading of the blank bid by the defendant was a fraudulent act—a statement of an alleged fact which in truth did not exist, as there was no such bid at that time. It was a representation contrary to the contents of the writing, and, therefore, a false statement of an existing fact intending to deceive. No explanation was given in the record for the commissioners' approval of the contract at an increased consideration; on the other hand it was not alleged or proven that they were parties to this alleged fraud. Evidently, if they were innocent, they were in some manner deceived. In any event, the jury was justified in concluding that the county, represented by the commissioners, was defrauded, as, according to Williams' testimony, all the costs in connection with the doing of the work under the contract were $289.

We are not convinced that there was any legal error in compelling the defendant to answer at the trial the charge for which he was indicted.

The appellant complains that it was improper for the district attorney on cross-examination to ask William F. Paes, called as defendant's witness, whether he did not tell a different story before the grand jury than at the trial of this case. The rule which forbids grand jurors to disclose what has transpired in the grand jury room does not apply to a witness who has testified before them, and who, at the trial, is asked concerning alleged contradictory statements: Com. v. Fotti, 93 Pa. Superior Ct. 365, 368.

Nor do we find merit in the appellant's contention that the court's charge, taken in its entirety, was inadequate. An examination of the instructions given to the jury brings us to the conclusion that the trial judge gave a fair and distinct presentation of the issues involved and of the law applicable thereto. The court carefully reviewed the testimony, and gave adequate instructions respecting the character evidence and the care that should be exercised in weighing the testimony of accomplices, and clearly explained the law on reasonable doubt. Particular emphasis was laid by appellant on the court's alleged failure to define adequately the meaning of the term "false pretense." The trial judge, after reading the indictment and the act of assembly under which appellant was indicted for false pretense, explained further to the jury as follows: "To constitute the crime of false pretense, the law is that there not only must be a false pretense, but there must be the obtaining of property by it, and it must be done with intent to cheat and defraud." After the completion of the charge, counsel for the defense were asked, "Have you anything further, gentlemen?" and reply was made in the negative. If the appellant was dissatisfied with the instructions, a request should have been made for the court to charge more fully on any omissions or inadequacy of statement of the relevant legal prin-

ciples involved. This was not done, and only a general exception to the charge was taken. "As appellant took only a general exception to the charge, he is not in a position to complain of mere inadequacies, lack of fulness at certain points, or failure to reiterate relevant principles in connection with named instructions when these were stated elsewhere in the charge": Com. v. Newman, 276 Pa. 534, 541, 120 A. 474.

We find no basic or fundamental error in the charge, nor is any other reason presented which warrants our deviating from the general rule that error can not be assigned to what was not said by the trial judge, without a request so to charge: Ellsworth v. Lauth, 311 Pa. 286, 166 A. 855. A litigant may not sit silent and take his chances on a verdict, and, if it is adverse, complain of a matter which, if error, could have been immediately rectified if attention of the trial judge had been called to it: Mastel v. Walker, 246 Pa. 65, 92 A. 63.

The appellant charges also that the trial judge coerced the jury into returning a verdict. The trial lasted over two days. The jury retired on June 15th at 2:05 P. M. and it was held by the court until the next evening at 7:20, when a verdict was rendered. During that period the jury reported to the court that they felt they could not come to an agreement in the case, but no request was expressly made to be discharged. It is entirely proper for a trial judge, in an endeavor to prevent another long and expensive trial, to admonish a jury as to the propriety and the importance of agreeing on a verdict, and he may urge the jury to make every reasonable effort to harmonize their views and to bring in a verdict consistent with their consciences. That was what was done here. We find nothing in the record that justified the charge of coercion. The fact that the jury may have returned what appears to the appellant to be an inconsistent

verdict, in that he was acquitted of conspiracy, does not, as alleged, indicate that the verdict was the result of compulsion. Verdicts do not always appear to be consistent. This court, speaking through Judge PARKER, held, in the case of Com. v. Kline, 107 Pa. Superior Ct. 594, 601, 164 A. 124, that a manifest inconsistency of the verdicts did not require the trial judge to set aside the conviction. As Mr. Justice HOLMES said in Dunn v. U. S., 284 U. S. 390, "Consistency in the verdict is not necessary. Each count in an indictment is regarded as if it was a separate indictment."

Although we have not discussed all the assignments of error in detail, we have given due consideration to the able argument of counsel in support of them. The conclusion reached is that the defendant had a fair and impartial trial, and there is no sufficient reason advanced for us to disturb the finding of the jury.

Judgment is affirmed, and it is ordered that the appellant appear in the court below at such time as he may there be called, and that he be by that court committed until he has performed the sentence or any part of it which had not beeen performed at the time the appeal in this case was made a supersedeas.