Commonwealth *v.* Morrison et al., Appellant.

134

Argued September 26, 1955. Before RHODES, P. J., HIRT, ROSS, GUNTHER, WRIGHT, WOODSIDE, and ERVIN, JJ.

*S. Thaddeus Kwiat,* for appellants.

*Damian McLaughlin,* District Attorney, for appellee.

Opinion by Ervin, J., November 16, 1955:

Karl E. Morrison and Donald C. Johnson were indicted on separate indictments, consolidated for the purpose of trial, and convicted under the Act of June 24, 1939, P. L. 872, §324, 18 PS §4324,[1] for hindering a witness. After their conviction motions for new trials were refused and each was sentenced to pay the costs of prosecution and undergo imprisonment for one year. These are appeals from the judgments and sentences.

Karl Morrison, one of the defendants in this case, was charged with sodomy and a preliminary hearing thereon was set before the alderman of the fourth ward in Erie, Pennsylvania, for May 17, 1954. Jack Russell was to appear at that hearing as a witness against Morrison. The hearing was continued to May 21, 1954, and then continued to May 28, 1954. On May 21, 1954 a subpoena was issued for Jack Russell to appear at the office of the alderman on May 28, 1954 at 3:30 p.m.

---

[1] The Act reads: "Whoever unlawfully dissuades, hinders, or prevents, or attempts to dissuade, hinder, or prevent any witness from attending and testifying before any committee of the Legislature, or before any court, judge, justice, or other judicial tribunal, when so required by virtue of any legal process or otherwise, is guilty of a misdemeanor, and upon conviction thereof, shall be sentenced to pay a fine not exceeding five hundred dollars ($500), or undergo an imprisonment not exceeding one (1) year, or both."

The subpoena was not served prior to the May 28 hearing. Russell was served on May 29, 1954 and appeared at the hearing held on June 7, 1954. The charges against the defendants in the instant case were brought by the Commonwealth for allegedly hindering the witness, Jack Russell, from appearing at the hearing scheduled for May 28, 1954.

The principal witness for the Commonwealth was Jack Russell. He testified that on May 8 or 9 he knew Karl Morrison had been arrested on a criminal charge and that he was to be a witness against him. He testified that on or about May 17 he met both defendants at McKinley Park and was told by Morrison it would be best for him to leave Erie because he, Russell, might be charged with the same offense with which Morrison was charged. As to Morrison, Russell testified "he said that he'd give me a car to leave town with and he'd provide me money." After this conversation the testimony discloses that Morrison, Johnson and Russell went to the office of a Justice of the Peace where Morrison transferred the title to a 1940 Buick coupe to Johnson and later the same day returned with Johnson and Russell and title to the automobile was transferred from Johnson to Russell. The fees involved in this transaction were paid by Morrison with his personal check. Russell testified that Morrison suggested he go to Conneaut, Ohio and that Morrison said "he'd send me approximately $10.00 every two days." Russell then left for Conneaut, Ohio on about May 17, 1954 and while there he said he received about $40.00 to $50.00 through Johnson. Russell identified two letters he received while in Conneaut from Don Johnson, one postmarked May 25 and the other May 27. One of the letters requested Russell "If near a *phone* call *22414* reverse." The telephone number given is listed in the name of defendant Morrison. The letter also

advises "Every thing is fairley quiet here & under *control*" and concludes with "P.S. And please keep *entirley* out of *Pa.*" The other letter is typewritten and begins "Enclosed is money order." The words "money order"' are crossed out and above them is written "No time to get a money order. Enclosed is cash." Also included was a direction "Meantime stay over there out of sight." On cross-examination it was developed that at the time of the conversations at McKinley Park Russell knew there was to be a hearing for defendant Morrison on May 17 and that Morrison told him he could get it postponed. Russell denied he went to Conneaut because he had relatives there and also denied that he left Erie because of fear he would be charged with fornication and bastardy. Russell returned to Erie on May 28 and after seeing his brother and mother went to police headquarters.

In testifying for the defense a sister of Russell testified that he had proposed to her husband stealing some of defendant Morrison's oil paintings and when her husband refused to do so, Russell said Morrison couldn't do anything because he'd back up the story of his brothers concerning the morals charge against Morrison. Defense witnesses also testified that Morrison owed Russell about $60.00 for work he had done for him and that it was a practice for the money to be paid to Johnson who would then pay Russell his share. Several defense witnesses also attempted to establish a possible reason for Russell's flight to Conneaut as being due to his fear of being charged with fornication and bastardy. Karl Morrison did not testify in his own defense. However, Don Johnson took the stand and testified he was employed by Morrison and had been for about a year, that Jack Russell had worked for Morrison and that Morrison would pay him and he in turn would pay Russell. He testified that he and· Russell

lived together and were close friends. He testified he took no part in the conversation at McKinley Park and had no conversation about Russell leaving Pennsylvania. He testified he didn't know and had not been told that Russell was to be a witness against Morrison. Johnson also testified that Morrison gave Russell the car for payment of part of the money Morrison owed Russell and that the money he sent Russell was for the balance due him for work done on Morrison's farm. Johnson also testified that the reference to keeping out of Pennsylvania in the letters he wrote to Russell was because of Russell's possible involvement in a fornication and bastardy case. This latter testimony was completely refuted when, on cross-examination, he testified that he was the father of the child in that case and had been charged with paternity of that child prior to Russell's departure for Conneaut. Johnson's testimony reads: "Q. As a matter of fact, you were the father of that child that's been talked about here, aren't you? . . . A. As far as I know, yes. . . . Q. And you knew he [Russell] was not going to be charged with being the father of the child? A. Yes."

The jury found both defendants guilty and recommended leniency for Johnson.

The contention of the appellants that they were denied fair and impartial trials because of the consolidation of the indictments for trial is clearly without merit. Both defendants were charged with the same offense—hindering Commonwealth witness Jack Russell from appearing at a preliminary hearing for the defendant Morrison on a charge of sodomy. The witness was one of the boys against whom the offense had been committed and had given a statement to the police; he was aware of Morrison's arrest and of the scheduled preliminary hearing; he knew he was to be a witness at that hearing though he had not been served

with any legal process. The charges grew out of the same occurrences and the evidence against both defendants was substantially the same. The consolidation of indictments for purpose of trial is a matter for the court's discretion and will not be disturbed unless there has been a manifest abuse of discretion or the joint trial so unfair as to be clearly unjust and prejudicial. *Com. v. Russo*, 177 Pa. Superior Ct. 470, 111 A. 2d 359. The instant case falls squarely within the principle enunciated by Justice Bell in *Com. v. Kloiber*, 378 Pa. 412, 415, 106 A. 2d 820: "Especially is a joint trial permissible, if not advisable, when the crimes charged grew out of the same acts and much of the same evidence is necessary or applicable to both defendants: [citing cases]."

Appellants also contend that since the witness, Jack Russell, was not under any legal process or subpoena, no offense was committed under the statute here involved. We concur in the conclusion of the learned judge of the court below that "This view fails to give meaning to the phrase 'or otherwise' and would limit the offense as involving only witnesses required to appear 'by virtue of any legal process.' Many witnesses appear before judicial tribunals without legal process, and it is the protection of all such witnesses that is intended by the comprehensive word 'otherwise.' In our view a witness required to appear by any method, other than legal process, or one who voluntarily appears, comes within the meaning of 'otherwise' as used in the statute." That this conclusion is correct is substantiated by the change in the wording in the present act from that contained in the Act of March 31, 1860, P. L. 382, §11, from which the statute here involved was derived. In the former act the requirement of attendance only concerned a witness who had been required to attend "by virtue of any writ of subpoena

or other legal process, or who may have been recognized to attend . . . .". In order to constitute a violation of the Act of 1860 the witness had to be under subpoena or other legal process. However, the change in the act, by the addition of the phrase "or otherwise" as it now appears in The Penal Code, in order to have any meaning, must include those witnesses who are required to appear whether directed to do so by legal process or not. In the instant case the witness, whose testimony is essential to support the charge of sodomy against one of the defendants, must be considered a witness who is required to appear though he was not served with a subpoena.

Appellants also contend it was error for the court below to allow the Commonwealth witness to testify as to certain letters he received and to allow such letters to be introduced into evidence. The letters were admittedly written by one of the defendants, Johnson, to Russell, the Commonwealth witness. The money enclosed was provided by the other defendant, Morrison. The attempted explanation for the directions contained in the letters for the witness to stay out of Pennsylvania was completely refuted by Johnson's testimony. He testified that these directions to Russell to stay out of Pennsylvania were because of Russell's involvement in a fornication and bastardy case. However, on cross-examination he admitted he was the father of the child involved and had been charged with paternity of that child prior to Russell's departure for Conneaut, Ohio. It clearly appears the letters are evidentiary in character and properly admissible against both defendants. They were links in the chain of circumstances involving both defendants and are admissible against both. See *Com. v. Marion*, 232 Pa. 413, 81 A. 423.

Appellants also contend the trial court erred in allowing the district attorney to question Johnson as to

what his explanation of the letters written by him to Russell had been in a previous trial in which the letters had been admitted as evidence. In the instant case Johnson testified he wrote Russell, the Commonwealth witness, to stay out of Pennsylvania because of his (Russell's) possible involvement in a fornication and bastardy case. The district attorney, in cross-examination, challenged this explanation and confronted him with his testimony in the prior trial in which he had offered no explanation of the letters. The district attorney further attacked Johnson's explanation by eliciting the admission that prior to sending the letters, he had entered a plea of guilty to the precise charge he had used as his explanation for writing letters to Russell directing him to stay in Ohio. We find no error in this cross-examination in view of Johnson's direct testimony. The scope of cross-examination of the district attorney was limited to matters brought out in direct examination. Moreover, the mere fact that cross-examination disclosed Johnson's guilt on a separate offense does not make that proof inadmissible, where, as here, it is relevant on the question of Johnson's guilt in hindering a witness. See *Com. v. Robinson*, 163 Pa. Superior Ct. 16, 60 A. 2d 824. See also *Com. v. Wable*, 382 Pa. 80, 114 A. 2d 334.

Appellants further contend it was error for the court below to allow the district attorney to bring out on cross-examination of Virginia Sprague, a defense witness, evidence of morals charges having been previously brought against Morrison, one of the defendants in this case. The testimony reveals that on direct examination the defense witness, in attempting to establish possible bias of Russell against defendant Morrison, testified concerning a statement attributed to Russell that he would back up a story of his brothers concerning Morrison. In the cross-examination of the

district attorney he elicited the explanation that by "story" was meant the morals charges brought against Morrison. Obviously, the cross-examination was limited in its scope to matters brought out on direct examination and was therefore proper. Nor is there any merit to the contention of appellants that it was error of the court below to restrict cross-examination of Russell by counsel for the appellants as to his efforts in preventing the destruction of Morrison's property by his brothers. Such questioning could have little if any relevancy in the instant case. Nor is there any foundation for appellants' contention they were denied a fair trial by adverse newspaper publicity prior and during the trial. The basis of this contention was the publication in the Erie Daily Times of a newspaper article in which it was brought out that Morrison, one of the defendants here involved, had been convicted of "four counts of morals offenses against young boys." The lower court properly refused appellants' motions for the withdrawal of a juror on the ground of unfavorable newspaper publicity. Such matters are within the discretion of the trial court. *Com. v. Deni*, 317 Pa. 289, 176 A. 919. There was no abuse of that discretion shown here. Furthermore, the record clearly reveals the trial court took adequate precautions to prevent any prejudice against the defendants by repeatedly admonishing the jury before and during the trial and at recesses to ignore any outside information they might see or hear and to try the case on the merits without influence from any outside sources.

We are also agreed the court below did not err in summarily dismissing the petition for writ of coram nobis. The writ of error coram nobis lies only where a petitioner brings forth some fact outside the record which was not known at the time judgment was rendered, through no fault of petitioner, and which had

it been known would have prevented the judgment.
*Com. v. Kadio*, 179 Pa. Superior Ct. 196, 115 A. 2d 777.
No such fact has been brought out in the petition in
this case and it was properly dismissed.

We have read carefully the entire charge and are
convinced that it was fair to both defendants and that
objections to it are without merit.   We are also con-
vinced the defendants had a fair trial and that the evi-
dence warranted conviction.

Judgments of sentence affirmed.