Commonwealth *v.* Bonomo, Appellant.

522

Argued June 18, 1958. Before RHODES, P. J., GUN-THER, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ. (HIRT, J., absent).

*Conrad A. Falvello,* with him *Rocco C. Falvello,* for appellant.

*John A. Gallagher,* Assistant District Attorney, with him *Albert H. Aston,* District Attorney, for appellee.

OPINION BY WATKINS, J., September 16, 1958:

The appellant, Ralph Bonomo, was tried and convicted on four indictments. The first, charged that he committed incestuous adultery with Marion Holliday, his niece, on the 30th of December, 1956; the second, that he committed statutory rape on the said Marion Holliday on the same date; the third, that on May 19, 1957, he did tend to corrupt the morals of minors under the age of eighteen years, the minors being Marion Holliday, then age 14, and Donald Meier, then 15 years of age, by having them pose in the nude for a photograph and having them pose for photographs while having intercourse; and the fourth, that on January 2, 1957, he did tend to corrupt the morals of minor children under the age of eighteen years, the minor children being the aforesaid Marion Holliday and Donald Meier, by having them engage in the act of intercourse in his presence. The defendant moved for a new trial and in arrest of judgment, the court en banc below denied the motions and the defendant was sentenced to 2 to 5 years on the rape conviction; other sentences were suspended and defendant ordered to pay the costs. These appeals followed.

524

At the trial, Bernard J. McCole, the prosecutor, a state policeman, and Wilbur Nauman, Chief of Police of White Haven, were permitted to testify in detail as to statements made by Donald Meier, a Commonwealth witness who was later called and testified on behalf of the Commonwealth. These statements were allegedly made by Meier in the course of the investigation, in a police car outside of White Haven, in the presence of the boy's father but in the absence of the defendant.

The statements were to the effect that the boy, Donald Meier, told the officers he was the boy in the pictures, and Marion Holliday was the girl; that eight pictures were taken, five were of them in the act of intercourse in different poses and three of Marion Holliday in the nude, where, when and by whom the pictures were taken. Donald Meier, when later called as a witness, contradicted these statements in many details.

The testimony, which was clearly hearsay, was permitted allegedly not to establish the truth of the facts contained therein, but merely to show that the statements were made to the officers, and thereby show that the prosecution was brought in good faith, and based upon a thorough investigation. A reading of this record indicates that this was certainly not the result of this testimony. The net result of admitting this testimony was to permit the Commonwealth to impeach their own witness, Donald Meier, for whose credibility they vouched by calling him, and who was not a surprise or hostile witness. They were aware of what his testimony would be far in advance of the trial. Also the court created a new exception to the hearsay rule, in that, it admitted such testimony to fortify a presumption; for it is presumed that a prosecution is brought in good faith.

The hearsay rule and the reasons therefor, together with the well established exceptions thereto, are hornbook law in this Commonwealth, and will not be discussed in detail. The courts, however, in several specific instances have relaxed the rule and allowed exceptions which in every case were supported by the rational justification of a circumstantial probability of trustworthiness and a necessity for the evidence. There existed here no impelling reason to admit the testimony.

The court below relied upon the following line of cases to support the admission of this testimony: *Com. v. Storey,* 49 Pa. Superior Ct. 282 (1912) ; *Com. v. Ricci,* 332 Pa. 540, 3 A. 2d 404 (1939) ; *Wagner v. Wagner,* 158 Pa. Superior Ct. 93, 43 A. 2d 912 (1945) ; *Com. v. Douglass,* 185 Pa. Superior Ct. 269, 138 A. 2d 193 (1958). We do not believe these cases are in point, although in none of them has the court relaxed the rule to the extent done here. *Com. v. Markwich,* 178 Pa. Superior Ct. 169, 113 A. 2d 323 (1955). Nor in any of these cases does the hearsay testimony admitted into evidence go to the issue of the guilt or innocence of the defendant. *Com. v. Bartell,* 184 Pa. Superior Ct. 528, at page 541, 136 A. 2d 166 (1957).

They are based upon the reasoning set forth by Chief Justice STERN in *Com. v. Ricci,* supra, at page 545, "This objection is based upon a not uncommon misapprehension of the hearsay rule. The testimony of a witness as to what some other person said is properly excluded when offered as evidence of the truth of the fact asserted, but the rule does not apply where the testimony is offered merely to prove that the statement was made." In the *Ricci* case the hearsay testimony was admitted to show the reason for the vacillation of a witness in making the identification of the defendant. It is the authority that supports the ad-

mission of hearsay evidence to explain why a witness failed to identify a defendant at a prior hearing and analogous situations. The extension of this rule beyond strictly limited use as set forth in the above cases is fraught with such inherent danger that should force appellate courts to carefully restrict its use to prevent grave injustice.

It is indeed an anomalous situation that the court permitted the testimony of the prosecuting officers as to the statements of the boy, Donald Meier, and sustained the objections of the appellant counsel as to the statements of Marion Holliday, when offered for the same allegedly limited purpose.

The statements made to the prosecuting officers by a Commonwealth witness plainly indicated that the defendant was guilty of the crimes for which he was on trial. The testimony, thus, stands as an unsworn out-of-court declaration and even if, as alleged, solely for the purpose of proving that the statement was made and not as evidence of the commission of the crime, its very source and the official positions of those who related it, must certainly influence the jury in determining the guilt of this defendant. It was obviously prejudicial hearsay testimony; its admission goes far beyond the exceptions; and the defendant was deprived of his right to a fair trial. This assignment of error is sustained.

The court below excluded testimony offered by the appellant of the ill repute of the minor female in her former place of residence. Judge PINOLA said: "She was not living at Hamburg when this thing happened and you've got to show the reputation in the community where she lived at the time this happened . . . This is an entire different community, it's not where she was living."

Among the charges for which the defendant was indicted, and tried, was statutory rape under Act of June 24, 1939, P. L. 872, Section 721, 18 PS §4721. This act includes the following: "Upon the trial of any defendant charged with the unlawful carnal knowledge and abuse of a woman child under the age of sixteen (16) years, if the jury shall find that such woman child was not of good repute, and that the carnal knowledge was with her consent, the defendant shall be acquitted of rape, and be convicted of fornication." This, then, constitutes the bad reputation of the woman child for chastity and her consent to the intercourse a complete defense to the charge of rape, if shown by the appellant. This opportunity should not be denied the appellant, except in very clear cases.

The good repute of the child will be presumed, and the burden of showing the bad reputation for chastity rests on the defendant. *Com. v. Howe,* 35 Pa. Superior Ct. 554 (1908). The word repute means the reputation of the person for chastity in the community in which she lives, at or about the time of the commission of the offense charged. *Com. v. Calvery,* 130 Pa. Superior Ct. 575, 198 A. 450 (1938); *Com. v. San Juan,* 129 Pa. Superior Ct. 179, 195 A. 433 (1937); *Com. v. Howe,* supra.

A reading of the authorities regarding evidence of this nature will indicate the above rules are not hard and fast. The definition of community and time depend largely on the circumstances of each case, and whether to admit such testimony under particular circumstances is largely a matter of discretion of the trial judge. *Com. v. White,* 271 Pa. 584, 115 A. 870 (1922). This discretion will not be disturbed unless it is abused.

The testimony in this case showed that the woman child lived in Hamburg in 1955, late in that year she moved to the City of Bethlehem and in 1956 moved to

the City of Allentown. The offense charged was allegedly committed in December, 1956, when she was living in Allentown. The defendant sought to show the bad reputation for chastity late in 1955 in the Borough of Hamburg. It is the opinion of this Court that refusal to permit this testimony constituted an abuse of discretion. Certainly it was not the intention of the legislature to limit the proof of bad reputation for chastity to a place to which the party had just become a resident and where it was impossible to have established a reputation of any kind. The reputation established by this minor child in her former residence at Hamburg, where she lived until late 1955, is certainly not so remote, when the crime alleged to have been committed was in December, 1956, so as to prevent that reputation testimony from being substantive evidence under the provisions of the Act of Assembly. The right of the defendant to show an established bad reputation for chastity should not be defeated because the individual whose reputation is in question moves from place to place, especially in large urban areas where the establishment of a reputation, either good or bad, is considerably more difficult, as is the proof thereof. This assignment of error is sustained.

The defendant attempted to prove by means of witnesses who were related to him that he was in Connecticut at the time of the offenses charged as occurring December 20, 1956 and January 2, 1957. In other words he offered an alibi as a defense.

An alibi, if proven and believed by the jury, constitutes a complete defense to the offense charged, and although alibi testimony should be carefully and minutely examined, the law concerning such a defense should not be glossed over by the court in its charge, nor its import to the matter be minimized. Judge PINOLA for the court below said: "The trial Judge de-

liberately and purposely made no reference whatso-
ever to the existence of any burden upon the defendant
to prove the defense of alibi." The case therefore went
to the jury without any instruction that an alibi does
not have to be supported by proof beyond a reason-
able doubt, but only by a fair preponderance of the
evidence so that they were free to conclude that the
burden on the Commonwealth and the defendant was
the same. *Com. v. Barnak,* 357 Pa. 391, 403, 54 A. 2d
865 (1947); *Com. v. Johnson,* 372 Pa. 266, 282, 93 A.
2d 691 (1953). Failure to charge as to the quantum
of proof necessary to prove an alibi, together with all
other aspects of the defense, is fundamental error.
*Com. v. Stein,* 305 Pa. 567, 158 A. 563 (1932); *Com. v.
Johnson,* supra. This assignment of error is sustained.

It is not error for a trial judge to comment on the
testimony of a witness and to call attention to its in-
herent probability or improbability, or to the incon-
sistency of one part of it with other parts, etc., as
bearing on his credibility, provided this is done fairly
and the credibility of the witness is left to the jury.
*Blumenthal v. Green,* 52 Pa. Superior Ct. 292 (1913).

The charge of the court in the instant case when
considered as a whole, as must be done, together with
the admission of the hearsay testimony of the police
officers, resulted in the destruction of the testimony
of Donald Meier and the substitution of the testimony
of the officers therefor. Also the repeated reference
to perjured testimony, perjury, and false testimony un-
der oath, such as, "Now, you decide, whether Mr. Mc-
Cole (the state policeman) is to be branded as a per-
jurer . . ." with the other comments, amounted to a
·direction by the court not to believe the witnesses for
the appellant. Any other finding would be a conclu-
sion that the police officers and other witnesses had
committed perjury. This constituted an abuse of dis-

cretion in that, it destroyed the right of the jury to determine the credibility of the witnesses. The assignments of error as to the charge are sustained.

The judgments of sentence are reversed and a new trial granted.

WRIGHT, J., would affirm on the opinion of PINOLA, J., of the court below.

---

CONCURRING OPINION BY WOODSIDE, J.:

I concur in the opinion of the majority except as it relates to the weight to be given to alibi evidence.

The Appellate Courts of this Commonwealth should have long since stated clearly, and thereafter stood firmly on what the trial judges should charge juries concerning the weight to be given alibi evidence.

To charge that an alibi must, in order to have it avail the defendant, be proved by a fair preponderance of the evidence, and then to charge that if alibi evidence, along with all other evidence, raises a reasonable doubt of the defendant's guilt he must be acquitted, is inconsistent, confusing and fallacious. See *Commonwealth v. Barnak*, 357 Pa. 391, 406, 54 A. 2d 865 (1947); *Commonwealth v. McQueen*, 178 Pa. Superior Ct. 38, 112 A. 2d 820 (1955); *Commonwealth v. Johnson*, 372 Pa. 266, 93 A. 2d 691 (1953); *Commonwealth v. Richardson*, 392 Pa. 528, 140 A. 2d 828 (1958). Encouraging the trial judges to continue using these selfproving fallacies should be stopped.

The Supreme Court said in *Commonwealth v. Barnak*, supra, that "It would be better if the jury was instructed, when the defense of an alibi is set up, that the burden remains on the Commonwealth to prove every essential element of the case, including the defendant's presence at the scene of the (crime) when, as in the instant case, that is a material element in the

case." This charge makes sense. To say that an alibi must be established by a fair preponderance of the evidence just is not true.

Suppose after deliberating in a case involving an alibi a juror, seeking further instruction, would say to the trial judge, "I am not convinced by the fair preponderance of the evidence that the defendant's alibi was established, and ignoring the alibi evidence I am convinced beyond a reasonable doubt of his guilt, but considering the alibi evidence, along with all the other evidence I have a reasonable doubt of his guilt. What should I do?" The trial judge, I presume, should tell the juror to acquit the defendant. The juror might then reply: "You told me that an alibi to avail the accused must be established by a fair preponderance of the evidence. Now you tell me that it avails the accused even though the alibi was not established by a fair preponderance of the evidence, providing it is sufficient to raise a reasonable doubt. Since it is self-evident both of your statements cannot be correct why confuse me by giving me two conflicting tests?" How can the trial judge answer that one?

I think there was no error in Judge PINOLA'S charge relating to alibi.

ERVIN, J., joins in this concurring opinion.