Commonwealth *v.* Pilosky, Appellant.
Commonwealth *v.* Komada, Appellant.

234

Submitted June 16, 1975. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*Malcolm W. Berkowitz,* and *Berkowitz and Gutkin,* for appellants.

*Barry H. Oxenburg, Mark Sendrow,* and *Steven H. Goldblatt,* Assistant District Attorneys, *Abraham J. Gafni,* Deputy District Attorney, and *F. Emmett Fitzpatrick,* District Attorney, for Commonwealth, appellee.

OPINION BY PRICE, J., March 29, 1976:

Appellants, Frank Pilosky and Daniel Komada, were co-defendants below. Following a jury trial, which took place from February 6 to February 22, 1974, both

appellants were found guilty of assault and battery,[1] aggravated assault and battery,[2] and forcible rape.[3] A third co-defendant was found not guilty of all charges.

The record reveals the following facts: On September 25, 1972, the complainant, Kathleen Antipuna, and a friend, Arlene Bradley, entered a bar for the purpose of using the rest room. Kathleen testified that the facility was located at the rear of the bar. She also stated that Arlene sat at the bar while Kathleen used the rest room. As she exited, she was accosted by the appellants and several other men, who dragged her to the second floor, hit her in the face, threw her on a mattress, ripped off her clothes, and raped her repeatedly. After several hours, only the complainant and the appellants remained in the room. At approximately 6 a.m., Kathleen noticed that the men were asleep. She then left the room and proceeded to the bar below, where she placed a call to her mother.[4]

Shortly thereafter, the mother arrived at the bar, accompanied by the complainant's husband and brother. The men forced entry into the locked bar, and saw Kathleen, who was partially clothed in a T-shirt and a towel. The men then ran to the second floor, where they attacked the sleeping appellants. The police arrived within five minutes, and, following their arrival, the complainant and the appellants were taken to the hospital. Kathleen was examined by a physician and found to have sustained bruises on her face, limbs, and body. Her vagina was red and edematous, consistent with prolonged intercourse and forcible penetration.

The appellants have raised numerous assignments of

---

1. Act of June 24, 1939, P.L. 872, §708 (18 P.S. §4708), *repealed,* Act of Dec. 6, 1972, P.L. 1482, No. 334, §5.

2. *Id.* at §709 (18 P.S. §4709).

3. *Id.* at §721 (18 P.S. §4721).

4. The victim and her husband did not have a telephone at their residence.

error, all of which are without merit. First, appellants contend that the lower court improperly refused a motion to dismiss the indictments because a potential witness, Arlene Bradley,[5] was attacked and beaten by the complainant and two companions. It is the appellants' contention that the attack resulted in the intimidation of the witness, thereby violating appellants' rights to due process of law. The constitutional violation, appellants believe, requires that the indictments be dismissed.

We are not persuaded by appellants' theory. While an attempt to influence the testimony of a witness may be relevant to the credibility of witnesses at trial, *cf.*, *Commonwealth v. Morrison*, 180 Pa. Superior Ct. 133, 118 A.2d 263, *cert. denied*, 352 U.S. 823 (1956); *Commonwealth v. Petro*, 115 Pa. Superior Ct. 388, 176 A. 46 (1934), it is in no way related to the dismissal of an indictment. Appellants have shown no defects in the indictments, and the lower court correctly refused the motion to dismiss. *See, Commonwealth v. Campbell*, 116 Pa. Superior Ct. 180, 176 A. 246 (1935).

Appellants next contend that the lower court erred in limiting cross-examination of the prosecutrix by sustaining objections to numerous questions, among them: (a) Weren't you on Welfare at the time? (b) Your father plans to sue the taproom, does he not? (c) Were you pregnant before you married your husband? Appellants contend that these questions were relevant to attack the complainant's credibility, to show her pecuniary interest, and to indicate her prior poor reputation for chastity.

We agree with the lower court that these questions were not proper in the instant case. Whether the complainant received welfare payments has no relevance to the issue involved, which is, whether the appellants raped and assaulted her. The question was intended to confuse the issues on trial, and the objection thereto was

5. Arlene Bradley is the girl who accompanied the victim to the bar on the night of the rape.

properly sustained. *Commonwealth v. Petrillo*, 341 Pa. 209, 19 A.2d 288 (1941).

The question concerning the victim's father's intention of instituting suit against the tavern was also improper. There was no proof of the father's intention, nor was there any indication that the victim would be a party to the suit. Therefore, there was nothing of record to show bias or pecuniary interest on the part of the complainant, and this question was correctly omitted from evidence. *Commonwealth v. Cheatham*, 429 Pa. 198, 239 A.2d 293 (1968). Moreover, appellants' counsel recognized that the question was improper. *See* NT 2 at 113. Finally, asking whether the prosecutrix was pregnant before her marriage is not a recognized means of proving her reputation for chastity. It is settled that proof of specific acts of intercourse is not relevant to proof of the victim's reputation for chastity. *Commonwealth v. Sutton*, 171 Pa. Superior Ct. 105, 90 A.2d 264 (1952). *See also Commonwealth v. Collin*, 233 Pa. Superior Ct. 300, 335 A.2d 383 (1975). Therefore, the lower court committed no error in sustaining the objection to this question.

With regard to the complainant's poor reputation for chastity, appellants allege another error. At trial, appellants offered the testimony of Harry Bell, a private investigator whom they had hired, to show the victim's bad character. The Commonwealth objected on the basis that ill repute must be shown by testimony of persons who reside in the community where the complainant lived at the time of the offense and who can testify to her reputation. The lower court sustained the objection.

It has been held that "repute" is the reputation of a person for chastity in the community in which she lives, at or about the time of the commission of the offense charged. *Commonwealth v. Bonomo*, 187 Pa. Superior Ct. 521, 144 A.2d 752 (1958), *aff'd*, 396 Pa. 222, 151 A.2d 441 (1959). That the definition of community depends largely upon the circumstances of each case is well-established.

*Commonwealth v. White*, 271 Pa. 584, 115 A. 870 (1922). The decision of whether to admit testimony under particular circumstances is within the discretion of the trial judge and will not be reversed absent an abuse of discretion. *Commonwealth v. Bonomo, supra.* We find no abuse in the instant case. There was no testimony to show either that the investigator lived in the community or that he could testify to his familiarity with or personal knowledge of the victim's repute. Under these circumstances, we can find no error in the lower court's action. *See* 3 *Wigmore, Evidence* §692 (Chadbourn rev. 1970).

Appellants also assert that the lower court erred in refusing to admit into evidence, for impeachment purposes, the complainant's juvenile record. There is no merit to this contention. Section 27 of The Juvenile Act, Act of Dec. 6, 1972, P.L. 1464, No. 333, §27 (11 P.S. §50-324 (b) ), provides:

> "The disposition of a child under this act *may not be used against him in any proceeding in any court other than at a subsequent juvenile hearing,* whether before or after reaching majority, except (i) in dispositional proceedings after conviction of a felony for the purposes of a presentence investigation and report or (ii) if relevant, where he has put his reputation or character in issue in a civil proceeding." (emphasis added)

*See also, Commonwealth v. Katchmer*, 453 Pa. 461, 309 A.2d 591 (1973), and cases cited therein. Therefore, the court below did not err in refusing to admit the victim's juvenile record into evidence.

Appellants next contend that reversible error was committed when the trial judge refused to sustain their objections to evidence of prior crimes committed by a defense witness, Thomas Zaroff. Appellants assert that *Commonwealth v. Katchmer, supra,* mandates a new trial in the instant case. We do not agree.

The Pennsylvania Supreme Court recently held that

a defendant could be impeached by proof of conviction of crimes involving dishonesty or false statement. *Commonwealth v. Bighum*, 452 Pa. 554, 307 A.2d 255 (1973). The rule was extended to include witnesses, as well as parties, in *Commonwealth v. Katchmer, supra.* The only issue we must resolve in the instant case, therefore, is whether the nature of Zaroff's prior convictions involved dishonesty or false statement. Our review of the record indicates that Zaroff had pled guilty to larceny, receiving stolen goods and forgery, following his purchase of merchandise on a stolen credit card. These convictions involve dishonesty of a nature which indicates a propensity for false swearing within the meaning of *Commonwealth v. Katchmer, supra. See*, 3A *Wigmore, Evidence* §926 (Chadbourn rev. 1970). The evidence was properly admitted.

Appellants also contend that the lower court erred in refusing appellants' demand that the Commonwealth call Arlene Bradley[6] as its witness. We find no such error. The lower court compelled Arlene Bradley to attend the entire trial, which she did, and provided the defense with the opportunity to call her as on cross-examination[7] if it so opted. Having failed to take advantage of the witness' accessibility and the opportunity to call her, appellants have no basis to allege prejudice. *See Commonwealth v. Jones*, 452 Pa. 569, 308 A.2d 598 (1973); *Commonwealth v. Gray*, 441 Pa. 91, 271 A.2d 486, *appeal dismissed*, 402 U.S. 967 (1971).

Next, appellants assert that the lower court improperly limited the scope of direct examination of their expert medical witness. Our review of the record indicates that the proffered questions called for a conclusion by the witness based on hypothetical facts which were not introduced at trial. The Pennsylvania

---

6. *See* n. 5, *supra.*

7. We need not comment on the propriety of this procedure because the Commonwealth posed no objection thereto, and the lower court apparently approved.

Supreme Court has stated that an expert may not state a conclusion based on evidence not of record. *Commonwealth v. Thomas*, 444 Pa. 436, 282 A.2d 693 (1971); *Murray v. Siegal*, 413 Pa. 23, 195 A.2d 790 (1963). Therefore, the lower court properly sustained objections to these questions.

Appellants next contend that the District Attorney's summation to the jury was improper, and that the trial court should have admonished the jury to disregard it. We do not agree. The portion of the summation to which appellants object concerns the effect of the attack upon appellants perpetrated by the victim's relatives when they entered the bar and saw her partially clothed and badly bruised. The relevant portion of the summation follows:

> "I'm going to ask you to look at that again as a form of corroboration of the testimony of Kathleen Antipuna.
>
> "Is that the kind of reaction, the kind of reaction that is consistent as to what she testified? Their state of mind was her physical appearance when they arrived at the bar and it is that physical appearance and that state of mind consistent, having been in the bar all night long, consistent with consenting intercourse or is that the kind of condition, an emotional condition having been in the bar all night long that they testified, having been held there against her will, having been beaten and brutalized in the manner that she testified, *I think Terence McGinley and Ricardo Antipuna bear out and corroborate Kathleen Antipuna's story, that is what her condition was at that time.*" (emphasis added) (NT 8 at 128-129)

The District Attorney's remarks were not inflammatory and did not express an opinion as to the guilt or innocence of the appellants. We find nothing in these remarks to indicate that their unavoidable effect would be to prejudice the jury so that they could not fairly weigh the evidence. *Commonwealth v. Hoffman*, 439 Pa.

348, 266 A.2d 726 (1970). *See, Commonwealth v. Goosby,* 450 Pa. 609, 301 A.2d 673 (1973).

Finally, appellants contend that the court below erred in failing to grant a motion for new trial on the basis of after-discovered evidence. However, a review of the record indicates that the evidence was discovered before the jury was dismissed at the close of trial. Therefore, the motion was properly denied. *Commonwealth v. Cooney,* 444 Pa. 416, 282 A.2d 29 (1971); *Commonwealth v. Swanson,* 432 Pa. 293, 248 A.2d 12 (1968), *cert. denied,* 394 U.S. 949 (1969).

Judgments affirmed.

DISSENTING OPINION BY HOFFMAN, J.:

The majority rejects appellants' contention that they were entitled to a new trial on the basis of after-discovered evidence because "a review of the record indicates that the evidence was discovered before the jury was dismissed at the close of trial." I would remand for a hearing on appellants' motion for a new trial because the Majority's conclusion is not supported by the record.

The contested "after-discovered" evidence in the instant case is an affidavit of one Robert Roberts in which he swore to the following facts: "I am a friend of Daniel A. Komada and Frank Pilosky, Defendants in the above-captioned case. I was present during their trial in Courtroom 414, City Hall, Philadelphia, Pennsylvania. During a Court recess on Thursday, February 20 [sic], 1974, at or about 12 o'clock noon, one of the jurors, Richard VanAcken, spoke to me. I had grown up in the same neighborhood with Mr. VanAcken and we had gone to Lincoln High School together. Mr. VanAcken said to me that he remembered Danny from going to Lincoln High School with him after seeing him in the Courtroom. Mr. VanAcken also said that there was a great deal of information in the trial that the jury was not allowed to hear. Mr. VanAcken also told me that the jury had

viewed the Television Movie, 'A Case of Rape,' on television the evening of Wednesday, February 20, 1974 and that as a result of viewing the movie, he, Richard VanAcken had the feeling from talking to the other jurors that they had turned their thinking around one-hundred and eighty (180°) degrees because of the affect of the movie." The affidavit was sworn to on March 19, almost a month after the trial had ended.

The requirements for granting a new trial based on after-discovered evidence are set forth in *Commonwealth v. Mosteller*, 446 Pa. 83, 88, 284 A. 2d 786, 788 (1971): " '…"A new trial in a criminal case will be awarded on the ground of after-discovered evidence where the evidence in question (1) has been discovered after the trial and could not have been obtained at or prior to the conclusion of the trial by the exercise of reasonable diligence; (2) is not merely corroborative or cumulative; (3) will not be used solely for impeaching credibility of a witness; and (4) is of such nature and character that a different verdict will likely result if a new trial is granted." ' " (citation omitted).

The lower court rejected appellants' claim that the affidavit would require a new trial because the court believed that the evidence was not, in fact, after-discovered: "The affidavit, if accepted as true, talks of matters which took place *before the end of the trial* and were known by a person who knew the defendant Komada well enough to be in attendance at the trial. It strains the Court's belief that such revelations would not have been made known to the defense by the affiant immediately upon gaining this intelligence from the juror." (Emphasis in original). Both the lower court and the Majority assume that appellants were aware of the conversation with the juror before trial ended. There is, however, no evidence to support this assumption. Thus, it is an open question when appellants discovered the alleged procedural irregularity; further, even if appellants learned of the impropriety before the end of

the trial, we do not know when counsel was informed of the affiant's story. It would be counsel, not appellants themselves, who would understand the legal significance of such facts.[1]

Therefore, whether the evidence was, in fact, "after-discovered" cannot be determined without a hearing before the lower court. If the court finds that the evidence was not discovered prior to the end of trial, it must then decide whether the evidence warrants a new trial. *Commonwealth v. Mosteller*, supra.[2]

Therefore, I would remand for further proceedings. SPAETH, J., joins in this dissenting opinion.

---

1. The lower court stated that it could not believe that the affiant would withhold such information from appellants and their counsel. Equally, I cannot assume that counsel would violate his professional responsibility by submitting an affidavit that he knows to be false. See Code of Professional Responsibility, Canon 1, DR 1-102(4) and (5); DR 7-108 (B) and (D). Before either this Court or the lower court can decide the issue, the record must include some evidence on the question of when the information was communicated to counsel.

2. Apparently, the lower court believed that "the petition was an attempt to obviate or bypass the rule of no impeachment of a verdict by a juror." That issue is not before this Court at this time. But see, *Parker v. Gladden*, 385 U.S. 363 (1966), (an extrajudicial attempt to influence the jury may be a denial of an accused's rights to confrontation and cross-examination); *Commonwealth v. Zlatovich*, 440 Pa. 388, 395, 269 A. 2d 469, 472 (1970); "...the jurors [are] competent to testify as to the improper conduct of a *third party* whose actions may have tended to affect their verdict and deliberations."