Michael T. HARRIS, Appellant,

v.

**SHERIFF OF DELAWARE COUNTY.**

Commonwealth Court of Pennsylvania.

Argued Feb. 8, 1996.

Decided April 26, 1996.

Jennifer Ann Heil, for Appellant.

John J. Maffei, for Appellee.

Before DOYLE and SMITH, (P.)JJ., and RODGERS, Senior Judge.

SMITH, Judge.

Michael T. Harris appeals from an order of the Court of Common Pleas of Delaware County (trial court) that denied Harris' appeal from the action of the Sheriff of Delaware County (Sheriff) revoking Harris' license to carry a firearm. The question Harris presents is whether the trial court erred in relying upon hearsay in reaching its decision that "good cause" existed to justify the revocation. The Sheriff counterstates the question as whether the evidence relied upon by the trial court was sufficient to show good cause.

## I.

The trial court's opinion in support of its order notes that Harris applied to the Sheriff for a license to carry a firearm, and the Sheriff issued such a license in March 1990, with an expiration date in March 1995. Harris applied for renewal, and the Sheriff issued a renewed license on March 10, 1995. On March 19, 1995, local police officers and agents of the Delaware County Criminal Investigation Division (CID) and the Federal Bureau of Investigation (FBI) stopped a car in which Harris was a passenger, based on information from informants that Harris was involved in criminal activity. Harris was not taken into custody, and no contraband was found on his person or in his house, which the officers searched later. The officers seized four guns found at Harris' home during the search, but they later returned them

to Harris when it was determined that his possession of the guns was lawful.

The Sheriff revoked Harris' license to carry a firearm on March 22, 1995, based on information provided to him by the FBI and the CID. The letter of revocation stated in part that Harris' permit was being revoked because of information received from the FBI and CID which indicated that Harris was involved in an illegal activity in the City of Chester. Harris surrendered his license and then filed a petition for review of the revocation and for reinstatement of the license. At the close of hearing on May 15, 1995, the trial court denied Harris' petition, and this appeal followed.[1]

The statute governing licenses to carry a firearm concealed on one's person or in a vehicle is Section 6109 of the Pennsylvania Uniform Firearms Act (Act), *as amended,* 18 Pa.C.S. § 6109. Section 6109 provides in part:

(d) **Sheriff to conduct investigation.**— The sheriff to whom the application is made shall investigate the applicant's record of criminal convictions, shall investigate whether or not the applicant is under indictment for or has ever been convicted of a crime punishable by imprisonment exceeding one year, shall investigate whether the applicant's character and reputation are such that the applicant will not be likely to act in a manner dangerous to public safety and shall investigate whether the applicant would be precluded from receiving a license under subsection (e)(1).

(e) **Issuance of license.**—

(1) A license to carry a firearm shall be for the purpose of carrying a firearm concealed on or about one's person or in a vehicle and shall be issued if, after an investigation not to exceed 45 days, it appears that the applicant is an individual concerning whom no good cause exists to deny the license. A license shall not be issued to any of the following:

(i) An individual whose character and reputation is such that the individual

---

**1.** The scope of this Court's review where a trial court takes evidence de novo in an appeal from a local agency adjudication is to determine whether the trial court manifestly abused its discretion, committed error of law or violated constitutional rights. *McLaughlin v. Centre County Housing Auth.,* 151 Pa.Cmwlth. 292, 616 A.2d 1073 (1992).

would be likely to act in a manner dangerous to public safety. . . .

. . . .

**(i) Revocation.**—A license to carry firearms may be revoked by the issuing authority for good cause. Notice of revocation shall be in writing and shall state the reason for revocation.

## II.

Harris contends that no firsthand information was presented to either the Sheriff or the trial court and that the decisions of both were based upon hearsay. He notes that findings based solely on hearsay may not stand, although the issuing authority is not bound by the technical rules of evidence under Section 554 of Local Agency Law, 2 Pa.C.S. § 554. In *Goodman v. Commonwealth*, 98 Pa.Cmwlth. 371, 511 A.2d 274 (1986), this Court concluded that a police chief's decision not to renew a license based solely on police reports of two incidents involving the applicant, where the authors did not testify and the record provided no corroborating evidence, was based solely on hearsay.

■ Harris notes that Chief Deputy Sheriff John McKenna testified that FBI agent Carl Wallace told him that unnamed confidential informants provided information that they had supplied Harris with large quantities of cocaine. In response to a question concerning the basis for contacts with people who knew Harris in the community, Wallace testified:

> Some of these people we were investigating for cocaine sales and they were indicted and agreed to cooperate and named him as an individual who they had sold substantial quantities of cocaine to. They also told us that he was one of the major distributors of cocaine in the City of Chester. Other individuals have told us that they purchased quantities of cocaine from Mr. Harris for the past several years.

N.T., p. 23. Wallace, however, had never witnessed Harris' receiving or distributing cocaine. In addition to Wallace, Detective David Peifer of the CID testified on behalf of the Sheriff. The detective testified that Harris was upset over the confiscation of the guns from his home, and he stated that he could not protect himself against the "Magids," who Peifer described as other cocaine dealers in Chester.[2]

The trial court concluded that the evidence concerning Harris' reputation as a cocaine dealer was admissible as an exception to the rule against admission of hearsay. Harris argues that the flaw in the trial court's reasoning is that the revocation was not based upon character or reputation but rather on allegations by informants, who were not identified or made available for cross-examination, that Harris had engaged in specific acts of drug dealing. In a reply brief, Harris cites *Commonwealth v. Neely*, 372 Pa.Superior Ct. 519, 539 A.2d 1317 (1988), *rev'd on other grounds*, 522 Pa. 236, 561 A.2d 1 (1989), where the Superior Court explained the purpose of and restrictions on the use of character evidence.

■ What one person reports about what others have said is obviously hearsay, subject to the flaw of being unverifiable.[3] Therefore, the witness must speak only to the defendant's general reputation, not to specific acts; he or she must be part of the subject's community and must not express a singular, personal opinion but rather the opinion that is the consensus of the community. *Neely*, 372 Pa.Superior Ct. at 524–525, 539 A.2d at 1320. *Accord Commonwealth v. Blount*, 538 Pa. 156, 647 A.2d 199 (1994). Harris asserts that there was no evidence that Wallace was a member of Harris' community and that the reputation evidence he offered was not the consensus of the general community but was instead the consensus of only a small collection of persons who were

---

2. Peifer stated further that the cars at Harris' residence were a Mercedes convertible, a Cadillac and another expensive, fairly new car and that to his knowledge Harris was not employed. He conceded that the police did not check the ownership of the vehicles or confiscate them.

3. Hearsay is an out-of-court statement—oral, written or even non-verbal—offered in court to prove the truth of the matter asserted. *Girard Giant Eagle v. Unemployment Compensation Board of Review*, 659 A.2d 60 (Pa.Cmwlth.1995).

engaged in drug trafficking and others who allegedly had purchased drugs from Harris.

As the trial court noted in its opinion, Section 6109 of the Act specifically states that the issuance of a firearm license may be made contingent upon the character and reputation of the applicant. This Court agrees that such evidence may also be relevant to the issue of revocation. Although the Act does not define the "good cause" that may support a revocation under Section 6109(i), this Court agrees that new information countering previous findings relating to specified criteria for the original issuance of the license (such as character or reputation that one may act in a manner dangerous to public safety) certainly would be among those factors that may constitute good cause for revocation. In addition, this Court has held that the legislature intended in Section 6109 of the Act to confer discretion on sheriffs, empowering them to exercise judgment in applying the Act's standards to determine if applicants should be licensed. *Gardner v. Jenkins,* 116 Pa.Cmwlth. 107, 541 A.2d 406, *appeal denied,* 520 Pa. 620, 554 A.2d 511 (1988). That principle applies also to the sheriff's determination of "good cause" for revocation.

This Court concludes that the challenged testimony was not entirely inadmissible hearsay. Although references to statements by individual informants that they had sold drugs to Harris or purchased drugs them from him do run afoul of the prohibition on reports of specific acts, as in *Goodman,* the testimony concerning statements by informants that Harris was known as a major drug dealer relate to reputation and as a result are admissible. *Neely.* As for the contentions that there was no proof that Wallace was a member of the community and that a small group of indicted persons do not reflect a community consensus, the court in *Commonwealth v. Pilosky,* 239 Pa.Superior Ct. 233, 362 A.2d 253 (1976), observed that the definition of community depends upon the circumstances of each case.

In *Pilosky,* a rape case, the Superior Court found no abuse of the trial court's discretion in excluding an investigator's testimony as to the reputation in the community of the alleged victim for chastity, where there was no testimony to show that the investigator lived there or that he could testify with personal knowledge of the victim's repute. Here, however, the CID and FBI witnesses have been involved in an ongoing investigation of drug activity in Chester, and they therefore have a basis for personal knowledge of Harris' reputation. On the question of community consensus, this Court regards sources admittedly involved in drug activity as being the most relevant community from which the contested reputation information could be obtained.

Apart from the evidence challenged by Harris as hearsay, the Sheriff notes the presence of other relevant evidence in the record. Peifer testified concerning Harris' statements expressing fear of attack by people whom Peifer identified as drug dealers. This Court agrees with the trial court that this testimony was admissible as declarations of present mental state and emotions under the res gestae exception to the hearsay rule. *See Commonwealth v. Pronkoskie,* 477 Pa. 132, 383 A.2d 858 (1978). Because Harris chose not to testify, he offered no denial or explanation as to this separate matter. Viewing the totality of the admissible evidence before the trial court as a whole, this Court concludes that the trial court did not err or abuse its discretion in upholding the decision of the Sheriff to revoke Harris' firearms license. The trial court's order is therefore affirmed.

## ORDER

AND NOW, this 26th day of April, 1996, the order of the Court of Common Pleas of Delaware County is affirmed.