Com. *v.* Lewis, Munn & Hibbert, Appellants.

Argued May 7, 1934. Before Trex- ler, P. J., Keller, Cunningham, Baldrige, Stadtfeld, Parker and James, JJ. No. 1549, November Sessions, 1931, is reversed and No. 698, December Sessions, 1931 is

*William A. Gray,* and with him *Maurice Stern* and *James A. Walker,* for appellants.

*Earl Jay Gratz,* Assistant District Attorney, and with him *Charles F. Kelley,* District Attorney, for appellee.

OPINION BY BALDRIGE, J., July 13, 1934:

In 1927 there were four Philadelphia banks, known as the Broad Street National Bank, Oak Lane Trust Company, National Bank of North Philadelphia, and Queen Lane National Bank. Lewis, appellant, was president of the Broad Street National Bank and the Oak Lane Trust Company; appellant Munn was secretary and treasurer of the Oak Lane Trust Company; and the remaining appellant, Hibbert, was title officer of the Oak Lane Trust Company. On October 6, 1928, these four banks were merged into the Bank of Philadelphia and Trust Company, of which Lewis was president; Munn, vice-president and secretary; and Hibbert, title officer.

In October, 1927, Munn, together with two other persons, agreed to purchase, for $95,000, a tract of land in Philadelphia, bounded on the north by Sanger Street; on the south by Godfrey Avenue; on the west by Bingham Street; on the east by Tabor Road. This tract was subsequently bisected by the laying out of Brill Street. Prior to the settlement, it was resold to the three appellants for the price of $110,000. On March 9, 1928, an agreement was made between the appellants and the Oak Lane Trust Company, whereby title was taken in the name of the Oak Lane Trust Company, as trustee, for the benefit of the appellants, and, by the terms thereof, appellants maintained con-

trol of the sale or other disposition of the property. The agreement provided that from the moneys realized from any sale, $24,000 was first to be paid to appellant Lewis and the remainder equally divided among the three appellants. Shortly thereafter, Godfrey Avenue and Sanger Street frontages were sold for $79,437.50 to a contractor, named Allen, who agreed to construct thirty houses on Godfrey Avenue and thirty on Sanger Street. To finance these operations, certain agreements and arrangements were made, which we think it is unnecessary to narrate for reasons hereinafter stated. In March, 1928, the appellants sold to Hamilton J. Branagan, Inc., the Brill Street frontages, bounded on the west by Bingham Street and on the east by Tabor Road, for the price of $65,100. To finance the developing of this property, by constructing thirty-one houses on the south side of Brill Street, the Oak Lane Trust Company, acting through Hibbert, advanced $102,300. Settlement was made on July 16, 1928, and to secure repayment, the bank took construction mortgages. It loaned Branagan an additional $28,000 on a collateral loan. This construction operation was completed, and only ten of the thirty-one houses were actually sold.

On June 12, 1929, Branagan proposed to develop the north side of Brill Street by constructing an additional thirty-one houses, and on that date applied for a loan from the Bank of Philadelphia and Trust Company, through Hibbert, which advanced $90,000, taking mortgages as security therefor. Settlement was made July 10, 1929. After deducting certain charges against the fund, there remained $76,199.54, which the Commonwealth contends, and the settlement sheet states, was to be used to construct the proposed additional thirty-one properties. This sum was allocated to Hamilton J. Branagan, Inc. building account No.

4, and the fund credited to that account, under the dual control of the bank and Branagan.

The appellants held a mortgage of $26,000 on the two Brill Street frontages. This mortgage was a junior lien to twenty-four first mortgages on the south side of Brill Street, and was a first lien on the north side of Brill Street. The settlement sheet showed that from the $90,000 fund loaned by the bank, $4,000 was allocated to "rel. prem. (release premises) from lien of mortgage, $26,000." This $4,000 was ultimately paid to defendants.

On August 6, 1928, an account was opened by the defendants, known as the "Godfrey, Sanger, Brill Streets agency account," to which deposits were credited representing funds received from the construction enterprises carried on by both Allen and Branagan, and from which payments were made for street improvements and other expenses incurred. On July 10, 1929, $9,000 was drawn from the Branagan building account No. 4, as evidenced by voucher on that date, and by check in that sum signed by Hibbert, as title officer of the bank, to the order of the Godfrey, Sanger, Brill Streets agency account, and credited to that account on July 20, 1929.

The appellants were charged with the unlawful abstraction, misapplication and embezzlement of bank funds from the Bank of Philadelphia and Trust Company, in indictments Nos. 696, 697, 698 and 699, December Sessions, 1931, under the provisions of the Act of April 16, 1929, P. L. 524, §1 (18 PS §2516); and with conspiring to abstract unlawfully and wilfully misapply funds of a bank, in indictment No. 1549, November Sessions, 1931. Indictments Nos. 696, 697 and 699 had to do with the transactions growing out of the Sanger-Godfrey Streets tract sold to Allen. Verdicts of not guilty were rendered as to those indictments by direction of the court. Verdicts

of guilty were rendered by the jury on the first five counts of the six counts in bill No. 698 and in the conspiracy bill No. 1549. Sentences were imposed, and these appeals followed.

The first position taken by the appellants is that the evidence was insufficient to warrant a conviction on the charge of misapplication. They argue that the $9,000 withdrawn from the Branagan building account did not establish a criminal intent as they were justly entitled to that sum; and that no evidence was produced to show that the $4,000 was a full payment for the release of the $26,000 mortgage—that it only constituted a payment on account.

The learned court below points out that there is doubt cast on the contention that the $9,000 was properly paid, by the fact that the question of the release of this mortgage must have arisen previously to the settlement because $4,000 was expressly allocated for that particular purpose therein. If the appellants' contention is correct, there appears to be no reason why the $9,000 should not have been set forth in the settlement sheet. Furthermore, the consequences of the withdrawal of that sum were that the building account was depleted to that extent, and that amount, which was necessary to complete the construction of the houses, was not available. Thus, the bank's security, with its advance money mortgages on the houses to be constructed, was impaired. To complete the construction, it would have been necessary for the bank to replace the $9,000, and thereby increase the amount of its loan and its risk. F. Morgan Carter, settlement clerk and assistant title officer of the Oak Lane Trust Company, testified that Hibbert had requested him to sign a voucher to withdraw $9,000 from the building account for the benefit of the appellants, which he refused to do. Although this voucher was never signed by Hibbert, nor anyone else, it was used,

and the fund withdrawn and credited to the agency account. The jury evidently did not accept as true the testimony of Hibbert that after building accounts are set up, the changing of the money from one account to another is "purely a matter of office detail."

A careful consideration of the record leads us to the conclusion that the jury was justified in finding that the defendants received for the release the consideration agreed upon, namely, $4,000, and that the withdrawal of the additional $9,000 from this fund, which was to be applied to the special purpose of completing the houses, was part of the defendants' scheme to profit personally in disregard of the bank's interest which they, as officials, were required to safeguard. It must be borne in mind that the defendants did not release for $4,000 all their security for the mortgages. They retained their second lien of the improved tract on the south side of Brill Street.

The appellants further contend that the funds alleged to have been misapplied were not those of a banking institution, as the $76,199.54 remaining of the $90,000 mortgage settlement was deposited to the credit of the Branagan building account. We do not look upon this account as money deposited to the credit of a depositor, subject to such use as he sees fit. The very nature of the transaction, with the joint control the bank retained with Branagan, clearly indicates that it was to be used for the definite purpose shown by the settlement sheet, and for no other, especially if the division was to the personal benefit of the officers of the bank and to the prejudice of that institution.

The indictment for conspiracy, having been found on November 25, 1931, was more than two years after the $9,000 was withdrawn on July 20, 1929, and, in our judgment, was barred by the statute of limitations, as contended by the appellants. The abstrac-

tion of the money—the gist of the crime charged— was on July 20, 1929, and not on December 2, 1929, when the account was closed by the division of the remaining funds therein among the defendants. The account was under their complete control, and the funds therein were in their constructive possession. On the same day that the $9,000 was deposited and credited to that account, the defendants were each paid $4,270.05. If there was a conspiracy to abstract illegally $9,000 from the $76,199.54 fund, as alleged, it was committed and completed on July 20, 1929, and not when the agency account was finally closed on December 2d. There is no evidence of any further unlawful conduct after the alleged abstraction.

The last assignment relates to the admission of Carter's testimony respecting the assessed valuation of what is known as the Erny and Eliason portions of the land purchased by the defendants. We are not convinced that the court committed error in admitting this testimony.

Judgment rendered in No. 1549 November Sessions, 1931, is reversed. Judgment in No. 698, December Sessions, 1931, is affirmed, and it is ordered that the appellants appear in the court below at such time as they may there be called and that they be by that court committed until they have complied with the sentence or any part of it which had not been performed at the time the appeal in No. 698 was made a supersedeas.