**In Re Anonymous No. 26 D.B. 83**

Disciplinary Docket Number 26 D.B. 83.

To the Honorable Chief Justice and Justices of The Supreme Court of Pennsylvania:

HAMMERMAN, Member, September 13, 1984— Pursuant to Pennsylvania Rule of Disciplinary Enforcement 208(d)(iii), the Disciplinary Board of the Supreme Court of Pennsylvania (board) submits its findings and recommendations to your honorable court with respect to the above-captioned Petition for Discipline.

## I. HISTORY OF PROCEEDINGS

On May 17, 1983, the Office of Disciplinary Counsel (petitioner) filed a Petition for Discipline alleging professional misconduct involving a charge against respondent, [        ] (respondent).

The charge alleged that respondent violated D.R. 1-102(A)(3), which prohibits an attorney from engaging in illegal conduct involving moral turpitude;

D.R. 1-102(A)(4), which prohibits an attorney from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation;

D.R. 1-102(A)(6), which prohibits an attorney from engaging in other conduct which adversely reflects on his fitness to practice law;

D.R. 9-102(A), which requires that all funds of clients paid to an attorney, except for advances for costs and expenses, be kept, in identifiable bank accounts in the state in which the attorney's office is located and that no funds belonging to the attorney shall be deposited therein except for funds sufficient to pay bank charges and funds belonging in part to the client and in part to the attorney;

D.R. 9-102(B)(3), which requires an attorney to maintain complete records of all funds, securities and other properties of a client coming into the pos-

session of the lawyer and to render appropriate accounts to the client regarding them; and

D.R. 9-102(B)(4), which requires an attorney to promptly pay or deliver to a client as requested by the client funds, securities, or other properties in the lawyer's possession which the client is entitled to receive.

The charge against respondent alleges that he was retained by one [A] ([A]) to stay the sale of her residence located at [          ] arising out of a foreclosure proceeding instituted by [B] Company ([B]). On or about November 1, 1982, [A] paid respondent the sum of $1,800 in cash for which she obtained a receipt. On or about November 22, 1982, [A] paid respondent the sum of $3,207.50 in cash for which she obtained a receipt. The aforesaid payments represented the sum necessary to stay the aforesaid sheriff's sale instituted by [B].

Respondent deposited the first sum into a checking account No. [      ], at [          ] Bank in [        ] which was titled "[Respondent] General Office Account". Respondent deposited only the sum of $2,500 out of the second payment to him in the aforesaid General Office Account.

Under cover of a letter dated December 3, 1982, respondent forwarded to counsel for [B] check No. 1610 drawn on his general office account, in the amount of $4,980.06 payable to the order of [B], which was returned marked "N.S.F." Counsel for [B] made one written demand on respondent to make the aforesaid dishonored check good and attempted on at least three occasions to contact respondent by telephone with regard thereto. Respondent did not reply to counsel for [B]. The aforesaid account was not an escrow account, contained funds belonging to respondent and was used by respondent for his personal obligations.

During this period of time respondent caused his general office account to go out of trust and to be overdrawn at various times.

Respondent did not have [A's] consent to use her funds for purposes other than payment of [B] and by virtue of his conduct as set forth hereinabove, respondent had commingled [A's] money with his own.

This matter was referred to hearing committee [      ] consisting of [          ]. Hearings were held on August 2, and August 25, 1983 and January 31, 1984. The opinion of the hearing committee was filed on April 16, 1984 dismissing the alleged violation of D.R. 1-102(A)(3) and D.R. 1-102(A)(4) and finding it unnecessary to find a violation of D.R. 1-102(A)(6); but did find violations of D.R. 9-102(A), D.R. 9-102(B)(3) and D.R. 9-102(B)(4). The committee recommended that respondent be suspended from the practice of law for a period of one year.

Petitioner excepted to the dismissal of certain of the violations alleged and requested that the discipline merited a substantial period of suspension. The matter was then referred to this member of the board for review and recommendation.


## II. STATEMENT OF FACTS

[          ], respondent, was admitted to the practice of law on or about April 26, 1971 and is presently about 42 years of age. He has maintained a principal office at [          ]. The charge which is the subject of this proceeding was testified to by [A] on August 2, 1983. She also stated that her property is still listed for sale by the sheriff until she can obtain all the monies due as the [B] will not accept any partial payment but insist on the full sum due being paid. The present attorney for [A] testified that he

received the sum of $2,000 from respondent in February 1983 and a further sum of $1,000 in the same month. He also stated that he received an additional $1,500 from respondent the day before the date for the hearing.

Petitioner then presented the manager of the building in which respondent rents his offices from the period of September 1, 1982 at a monthly rental of $1,397.32. The manager, [C] testified that he received a check for $1,500 on December 3, 1982 and that respondent was in arrears for four months. Under cross-examination [C] testified that management was working with respondent, since there was no formal lease to cut back on his space, applying the monies over a longer period, and having respondent do much of their legal work in order to decrease the debt, because of their knowledge of the community work which respondent was engaged in for no fee.

Another witness for petitioner, a [D], employed as a secretary-treasurer for the [E] Auto Leasing, testified that respondent had signed an auto leasing contract with her company for a monthly rental of $278.88 on which he was in arrears until November 8, 1982 when he paid the sum of $860.

Respondent testified that since he represented the complainant's employer, he talked with her whenever he visited this client. He also corroborated the testimony of the rental manager that his check in the sum of $1,500 was to have been held and not deposited, as it was done prematurely. It appears that as between the rental manager and respondent there was an understanding that matters would be held in abeyance because of a dispute of the sum to be made a part of a lease agreement, and that respondent had been doing work on the legal affairs of the company for the building.

There is no dispute that respondent did not deposit the monies of [A] into an escrow account and that he admitted that this general office account was overdrawn between October 1982 and April 1983.

## III. DISCUSSION

It must be conceded that the misuse by an attorney of funds which have been entrusted to him by a client for safekeeping is contrary to justice, honesty or good morals and is illegal. Commonwealth v. Cygan, et al., 212 Pa. Super. 384, 243 A.2d 476 (1968). Respondent did breach his trust and duty concerning funds lawfully in his control belonging to another party, and the wrongful appropriation of those funds to the first party's use. Commonwealth v. Wheeler, 200 Pa. Super. 284, 189 A.2d 291 (1963). The hearing committee properly found that respondent willfully commingled [A's] money with his own by depositing it into his general office account.

However, the hearing committee found that respondent's conduct in using his client's funds did not constitute moral turpitude, dishonesty, fraud, misrepresentation or deceit in violation of D.R. 1-102(A)(4) and D.R. 1-102(A)(3). The committee did find, however, that he had violated the remaining rules he had been charged with.

The committee in discussing the proper discipline recognized that respondent's conduct was a matter of grave concern to the public. It distinguished the instant case, properly, from In the Matter of Green, 470 Pa. 164, 368 A.2d 245 (1977) and In Office of Disciplinary Counsel v. Grigsby, 493 Pa. 194, 425 A.2d 733 (1981), in that respondent had not filed sworn pleadings known to be false and had

not engaged in deceit, fraud and misrepresentation. In addition, based upon the testimony of [C], the committee was of the opinion that respondent was not a bad person and did perform services for people in the community without charging them legal fees. The hearing committee, therefore recommended that respondent be suspended for a period of one year. Petititioner recommended that the board consider a more substantial period of suspension.

## IV. CONCLUSION

The Disciplinary Board accepts the findings of fact and conclusions of law as set forth in the hearing committee's report and incorporates them herein by reference.

## V. RECOMMENDATION

The Disciplinary Board by a majority vote, after full discussion, recommends that respondent be suspended from the practice of law for a period of two years.

## DISSENTING REPORT
## AND RECOMMENDATION

To The Honorable Chief Justice and Justices of The Supreme Court of Pennsylvania:

KECK, *Member*, September 13, 1984—I dissent from the report and recommendation of the Disciplinary Board in the above-captioned matter and submit this report.

## I. HISTORY OF PROCEEDINGS

The history of proceedings is described in the report of the board and need not be repeated here.

## II. STATEMENT OF FACTS

1. Respondent received money from a client for the express purpose of paying the amount due to a mortgage company ([B]) so as to avert the sale by sheriff of the client's home.

2. Respondent deposited some of the money in his general office account but failed to account for the entire sum.

3. Respondent offered the mortgage company a check for slightly less than the full amount due. The check was returned for insufficient funds. The partial payment was not acceptable to the mortgage company.

4. The sheriff's sale of the client's home was averted by the fortuitous order of Judge [F] staying all sheriff's sales of owner occupied homes.

5. Respondent made partial restitution of the client's funds after the client secured other counsel and disciplinary proceedings were begun.

## III. CONCLUSIONS

1. Respondent's failure to deposit his client's funds in an escrow account is a direct violation of D.R. 9-102(A)(2). This is in agreement with the report of the board.

2. Respondent's failure to make complete restitution to the client is a violation of D.R. 9-102(B)(4) which provides that "A lawyer shall: . . . (4) Promptly pay or deliver to the client as requested by a client the funds, securities, or other properties in the possession of the lawyer which the client is entitled to receive."

3. Respondent's apparent conversion of his client's funds to his own use is an act of dishonesty which violates D.R. 1-102(A)(4) which states "A

lawyer shall not: . . . (4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation."

4. Respondent's offer of a bad check in payment of a substantial portion of the amount due reflects adversely upon his fitness to practice law contrary to the provision of D.R. 1-102(A) (6) which states "A lawyer shall not: . . . (6) Engage in any other conduct that adversely reflects on his fitness to practice law."

5. Respondent's offer of the bad check further constitutes a violation of D.R. 7-101(A)(1) which provides that "A lawyer shall not intentionally: (1) Fail to seek the lawful objectives of his client through reasonably available means. . ."

## IV. DISCUSSION

As the recipient of eight informal admonitions respondent should have been aware of the existence of the Disciplinary Rules and of the necessity for him to act in conformity with them, yet he engaged in the violative behavior described above.

Respondent's conversion of his client's funds to his own use, and failure to make complete restitution constitutes stealing, which is a most reprehensible form of lawyer behavior.

Respondent's failure to make timely payment of the full amount due to the mortgage company jeopardized his client's property which would have been sold at sheriff's sale but for the fortuitous order of Judge [F].

The public must be able to trust their lawyers to be scrupulously honest in the care of funds and to be conscientious in attending to their clients' business in timely fashion. Respondent's behavior in the matter at hand damages that public trust and di-

minishes the reputation of the entire legal profession.

The hearing committee reported that testimony was offered that respondent provides valuable legal services at little or not fee to the poor residents of the neighborhood in which he practices. This commendable activity does not, however, give him leave to flout the Disciplinary Rules, to appropriate client's funds to his own use, or to jeopardize his client's interests as he did in the matter at hand.

## V. RECOMMENDATION

I recommend that your honorable court order respondent to show cause why he should not be disbarred and that he be disbarred unless he is able to provide satisfactory explanation for his serious violation of the Disciplinary Rules.

Messrs. Krawitz and McDonald join in the Dissent.

## ORDER

NIX, C.J., And now, this October 18, 1984, upon consideration of the report and recommendation of the Disciplinary Board and the dissenting report and recommendation dated September 13, 1984, it is hereby ordered that [Respondent] be and he is suspended from the Bar of the Commonwealth for a period of one year, and he shall comply with all the provisions of Rule 217, Pa.R.D.E. It is further ordered that respondent shall pay costs to the Disciplinary Board pursuant to Rule 208(g), Pa.R.D.E.

Mr. Justice Larsen, Mr. Justice Flaherty and Mr. Justice Papadakos dissent and would suspend respondent immediately and issue a rule to show cause why he should not be disbarred.