IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Manuel Rodriguez,                          :
                    Appellant       :
                                :
      v.                           : No.  917 C.D. 2021
                                : Submitted:  June 23, 2022
Joseph N. Hanna                            :

BEFORE:   HONORABLE RENÉE COHN JUBELIRER, President Judge
                 HONORABLE STACY WALLACE, Judge
                 HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WALLACE                         FILED:  October 12, 2022

Manuel Rodriguez (Rodriguez) appeals from the July 28, 2021 order of the Court of Common Pleas of Lehigh County (trial court) that affirmed the decision of Joseph N. Hanna, Sheriff of Lehigh County (Sheriff), to revoke Rodriguez's license to carry a concealed firearm (firearms license) pursuant to the Pennsylvania Uniform Firearms Act of 1995 (Firearms Act).[1]  After review, we reverse the trial court's order.

Sheriff granted Rodriguez a firearms license in accordance with the Firearms Act on February 9, 1999.  Reproduced Record (R.R.) at 35a.  In December 2018, Sheriff sent Rodriguez a renewal form to his Lehigh County address, which was the address he used when he originally applied.  R.R. at 35a.  Rodriguez completed the

_____

[1] 18 Pa. C.S. §§ 6101-6128.

renewal application and Sheriff granted Rodriguez's renewal request in early 2019. *Id.*

In December 2019, Sheriff sent a letter revoking Rodriguez's license to carry pursuant to 18 Pa. C.S. § 6109(i), asserting that Rodriguez is an individual "whose character and reputation is such that [he] would be likely to act in a manner dangerous to public safety."[2] R.R. at 14a. Sheriff also cited, as a basis for the revocation, 18 Pa. C.S. § 6109(b), which requires that an individual apply for a firearms license with the sheriff of the county in which he resides. *Id.* Sheriff alleged that Rodriguez was not a resident of Lehigh County at the time he submitted his renewal application. R.R. at 15a. Rodriguez filed an Amended Petition for Appeal and Exceptions to Sheriff's Determination (Petition). R.R. at 16a.

The trial court held a hearing on April 16, 2021. R.R. at 48a - 142a. At the hearing, Sheriff and Brian Webbe, Monroe County Office of the District Attorney Detective (Detective), testified on behalf of Sheriff. Sheriff testified that after Rodriguez's firearms license renewal, Detective informed him that Rodriguez had criminal charges pending in Monroe County and alerted him that Rodriguez may not be a resident of Lehigh County. R.R. at 73a, 76a. Sheriff testified that Detective gave him the incident reports from his investigations and Detective's three incident reports were admitted into evidence at the hearing. R.R. at 77a, 229a-99a.

---

[2] Sheriff sent two letters to Rodriguez revoking his license to carry. Sheriff sent the first letter on July 30, 2019, and indicated that Rodriguez's license to carry was being revoked pursuant to 18 Pa. C.S. § 6109(e)(1)(i), which provides that a licensee's firearms license shall be revoked if the licensee has been charged with or convicted of a crime punishable by a term of imprisonment exceeding one year, as defined in 18 Pa. C.S. § 6102, and referencing Rodriguez's pending charges in Monroe County, Pennsylvania. Sheriff sent the second letter on December 13, 2019, and indicated that the second letter was "intended to replace and supersede the letter of July 30, 2019, in its entirety." R.R. at 212a. As such, we address only the December 13, 2019 letter.

2

According to the first incident report, in 2016 Detective encountered Rodriguez driving a white unmarked Ford Crown Victoria with an emergency light bar and tinted windows. R.R. at 231a. The vehicle had a side-mounted spotlight, emergency lights on the dashboard, and a siren box installed in the center console of the vehicle. R.R. at 232a. Detective issued traffic citations to Rodriguez during this incident. R.R. at 233a. Rodriguez, who was a constable at the time, claimed that he was permitted to have the tinted windows and lights. R.R. at 232a-33a. Sheriff convicted Rodriguez of the summary traffic offenses at a hearing. R.R. at 242a.

Based on testimony and evidence presented at the traffic hearing, Detective investigated Rodriguez for providing false information during that hearing, which resulted in the second incident report. R.R. at 242a-43a. Subsequently, in 2019, Detective investigated Rodriguez for providing false information about his residential address, which resulted in the third incident report. R.R. at 279a. Based on the second and third investigations, Detective charged Rodriguez with, among other things, various crimes including false swearing or misleading a public servant, perjury, criminal attempt to obstruct a government function, and false swearing at an official proceeding. R.R. at 45a. In relation to the charges from the second and third incidents, Rodriguez pled guilty to two counts of disorderly conduct, graded as summary offenses. R.R. at 74a. The district attorney withdrew the remaining charges. R.R. at 74a.

At the license revocation hearing, when asked about the factors he considered in making the determination to revoke Rodriguez's license, Sheriff testified that he considered: (1) the motor vehicle violation for tinted windows; (2) the two summary convictions for disorderly conduct; and (3) the discrepancy between Rodriguez's address compared to the address he listed on his renewal form. R.R. at 83a-84a.

Regarding his address, Sheriff testified that while Rodriguez listed the Lehigh County address on his renewal application, he had reason to believe that Rodriguez was living elsewhere. R.R. at 84a. When asked what his concerns were regarding Rodriguez's character or reputation that led him to decide to revoke Rodriguez's firearms license, Sheriff stated "[w]ell, among other things, truthfulness and veracity." R.R. at 77a.

At the license revocation hearing before the trial court, Rodriguez testified to maintaining three addresses: his Lehigh County address, his Monroe County address, and his New York City, New York, address. R.R. at 109a, 111a. Rodriguez stipulated that at the time he filled out his renewal application, while he was primarily living at his Monroe County address, he used his Lehigh County address on his renewal application. R.R. at 109a. Rodriguez testified that he continued to maintain his Lehigh County address and received his renewal application in the mail at that address. R.R. at 113a. Additionally, Rodriguez attempted to enter his resumé and firearms training certificates into the record for the trial court's consideration, but the trial court sustained Sheriff's objection holding that the documents were not relevant.

On July 28, 2021, the trial court issued its Memorandum Opinion and Order (Opinion) denying Rodriguez's appeal. R.R. at 42a. In its decision, the trial court stated:

> Here, [Sheriff] reviewed [Rodriguez's] record of criminal conviction and investigated whether the applicant's character and reputation are such that the applicant will be likely to act in a manner dangerous to the public and determined that [Rodriguez's] character and reputation are such that [Rodriguez] will be likely to act in a manner dangerous to the public. Therefore, as the issuing authority, after determining a violation of subsection (e)(1) [of Section 6109] within the permit term, [Sheriff] appropriately revoked [Rodriguez's] license.

4

Trial Ct. Op. at 3. The trial court noted that the criminal incident reports and "evidence presented" illustrate Rodriguez's character and reputation and support Sheriff's decision. Trial Ct. Op. at 3. The trial court did not issue findings of fact, but held that Sheriff appropriately determined Rodriguez's likelihood of acting in a manner dangerous to the public and properly revoked Rodriguez's license. Trial Ct. Op. at 3.

Rodriguez appealed to this Court. On appeal, Rodriguez makes three arguments. First, he asserts that the trial court erred in upholding Sheriff's determination because Rodriguez's pending criminal charges do not indicate that he has a character and reputation such that he would likely act in a manner dangerous to public safety. Second, Rodriguez asserts that his listed address differing from his residence address does not infer that he has a character and reputation likely to act in a manner dangerous to public safety. Rodriguez's Br. at 5. Third, Rodriguez asserts that the trial court erred in concluding that Rodriguez's resumé and gun training certificates obtained as a constable were not relevant to rebut Sheriff's determination that Rodriguez has a character and reputation that he would likely act in a manner dangerous to public safety. *Id.*

Our review is limited to determining whether the trial court abused its discretion, whether it committed an error of law, or whether it violated Rodriguez's constitutional rights. *Harris v. Sheriff of Del. Cnty.*, 675 A.2d 400 (Pa. Cmwlth. 1996). The trial court abuses its discretion when its decision rests upon "clearly erroneous finding[s] of fact, an errant conclusion of law, or an improper application of law to fact[.]" *Doe v. Franklin Cnty.*, 272 A.3d 1022, 1029 (Pa. Cmwlth. 2022). A sheriff's decision to revoke a firearms license is subject to review by the trial court. *See* 18 Pa. C.S. § 6114; 2 Pa. C.S. § 752. Where a full and complete record

5

of the proceedings before the sheriff is not made, the trial court may hear the appeal de novo or remand to the sheriff for the purpose of making a full and complete record. 2 Pa. C.S. § 754. The trial court's review of a sheriff's determination requires that it consider whether there has been a violation of constitutional rights and whether the sheriff's findings of fact are consistent with its conclusions of law and can be sustained without a capricious disregard of competent evidence; but, where a hearing de novo is held, the trial court must weigh the evidence and make its own findings of fact and conclusions of law which this Court can then review. *Bd. of Pensions & Ret. of City of Phila. v. Einhorn*, 442 A.2d 21 (Pa. Cmwlth. 1982).

Section 6109 of the Firearms Act governs firearms licenses and directs the sheriff to investigate an applicant's qualifications to receive a firearms license. 18 Pa. C.S. § 6109(d). A firearms license shall be issued if, after the sheriff's investigation, "it appears that the applicant is an individual concerning whom no good cause exists to deny the license." 18 Pa. C.S. § 6109(e)(1). Notably, under Section 6109(e)(1)(i), a license shall not issue to any individual "whose character and reputation is such that the individual would be likely to act in a manner dangerous to public safety." 18 Pa. C.S. § 6109(e)(1)(i).

Regarding revocation, Section 6109(i) indicates that a firearms license may be revoked by the sheriff "for good cause." 18 Pa. C.S. §6109(i). A firearms license shall be revoked if it is evident that a license was issued to an individual "whose character and reputation is such that the individual would be likely to act in a manner dangerous to public safety." 18 Pa. C.S. § 6109(e). This Court has recognized that the legislature intended Section 6109 of the Firearms Act to confer discretion on sheriffs, empowering them to exercise judgment in applying the Firearms Act's standards to determine if applicants should be licensed or have their

6

licenses revoked. *Morley v. City of Phila. Licenses & Inspections Unit*, 844 A.2d 637 (Pa. Cmwlth. 2004).

While we recognize a sheriff's discretion in applying the standards of the Firearms Act, whether "good cause" exists for a firearms license revocation is a legal conclusion that must be based on factual findings. *In Re McCrane* (Pa. Cmwlth., No. 1749 C.D. 2016, filed Dec. 8, 2017).[3] Such factual findings require evidentiary support. *Caba v. Weaknecht*, 64 A.3d 39 (Pa. Cmwlth. 2013). Thus, a firearms license revocation must be upheld only "when *the evidence* supports a conclusion that an individual licensed to carry a firearm does not possess the requisite character and reputation to do so[.]" *Tsokas v. Bd. of License & Inspection Rev.*, 777 A.2d 1197, 1202 (Pa. Cmwlth. 2001) (emphasis added). A review of other revocation decisions demonstrates the types of evidence considered sufficient to support a firearms license revocation.

In *Morley*, 844 A.2d at 637, the licensee took a weapon into a bar that he had previously left. He got into an argument, lost his temper, and had to be restrained from assaulting another patron. During the incident, he drew his gun and ordered everyone to leave the bar. *Id*. at 641. We concluded that these facts supported the determination that the licensee lacked the requisite character and reputation to entitle him to be licensed to carry a firearm. *Id.* In *Smith v. Nace*, 824 A.2d 416, 418-20 (Pa. Cmwlth. 2003), during a road rage incident while another driver attempted to merge into traffic, the licensee sped up, did not let the other driver merge, became visibly frustrated, drew his firearm, held it in the air, waved it, and then slammed it on the dashboard. On appeal, we upheld the firearms license revocation. *Id.*

---

[3] Unreported opinions of this Court issued after January 15, 2008, may be cited for their persuasive value pursuant to Section 414(a) of this Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a).

Similarly, in *Gardner v. Jenkins*, 541 A.2d 406 (Pa. Cmwlth. 1987), the licensee pulled a gun when plumbers were performing work in his home, waved it around, and announced that it was how he got work done. Again, we upheld the firearms license revocation. *Id*. In *Tsokas*, 777 A.2d at 1199, we upheld the licensee's firearms license revocation which was based on numerous incidents including brandishing his gun, threatening to shoot individuals, showing his gun to children playing, and pulling his gun on an individual and threatening, "I'll blow your brains out."

The circumstances of this case are readily distinguishable from the cases cited above as there is no evidence in the record that Rodriguez brandished a weapon or engaged in assaultive, threatening, or dangerous behavior. We also distinguish the facts here with those we addressed in *McCrane* where we upheld the trial court's reversal of firearms license revocations.

In *McCrane*, slip op. at 2-3, the evidence showed that the licensees drove down a deserted back street with a siren and flashing lights operating, and apparent police paraphernalia in the vehicle including: three handguns, boxes of ammunition, police department "No Parking" signs, an official placard for the police department, a hand-held radio, a nightstick, flashlights, plastic zip ties linked as flex cuffs, and several pages of alleged police flash sheets. The police arrested the licensees for impersonating police officers, but a district magistrate dismissed the criminal charges following the preliminary hearing for lack of a prima facie case. *Id*. The city's board of license and inspection review (board) drew an inference that the licensees were engaged in the crime of attempting to impersonate police officers, but "[w]orse, from the inference of a crime, the [b]oard further inferred dangerous character." *McCrane*, slip op. at 15. Notably, there was no evidence that the

8

licensees touched or displayed any weapons, uttered any verbal threats, made any threatening motions, or otherwise acted in a dangerous manner. *Id.* With the record void of any other evidence regarding the licensees' reputations, the trial court held that the revocation decision was not based on evidence of record or reasonable inferences and reversed the board's decision to revoke the licensees' firearms licenses. *Id.* We upheld the trial court's decision. *Id.*

Here, Sheriff testified about one incident and two subsequent investigations conducted by Detective. Sheriff produced less evidence of Rodriguez's alleged dangerous character than the board presented in *McCrane*. Rodriguez was driving a vehicle with alleged police paraphernalia, including an emergency light bar and a siren. At the hearing, counsel argued that "if you read the incident reports, you'll see there are instances of driving around in tinted windows on a vehicle and . . . it looks very much like he is trying to be law enforcement, and I think that goes to public safety." R.R. at 96a. However, there is no evidence in the record that Rodriguez displayed any weapons, uttered any verbal threats, made any threatening motions, or otherwise acted in a dangerous manner. While the evidence in the record supports an inference of traffic violations, it does not support an inference of dangerous character.

The record in this case is devoid of evidence regarding Rodriguez's reputation or propensity to act in a dangerous manner. While Sheriff testified that based on the information he was provided from Detective, he had concerns about Rodriguez's reputation and character for "truthfulness and veracity," he failed to articulate a basis for any concerns about Rodriguez's reputation and character for being a danger to public safety. In fact, Detective, who investigated the three incidents relied on by

9

Sheriff, testified that he had "no information regarding [ ] Rodriguez's propensity . . . to be a threat to public safety." R.R. at 89a.

Viewing the totality of the evidence in the record, this Court concludes that the trial court abused its discretion in determining that the evidence was sufficient to support Sheriff's conclusion that Rodriguez's character and reputation demonstrate that he would be likely to act in a manner dangerous to public safety. The trial court held a hearing and created a record, but, rather than issue its own findings of fact or conclusions of law, it deferred to Sheriff's conclusion, stating "[u]nder the Firearms Act, [Sheriff] is the person that the legislature determined was appropriate to conduct these investigations and make these determinations. This [c]ourt sees no reason to disturb this decision." Trial Ct. Op. at 4. While it is true, as this Court has acknowledged, that the legislature conferred discretion to sheriffs to apply the standards of the Firearms Act, a sheriff's conclusion as to a licensee's reputation must be supported by evidence of record. Here, Sheriff's conclusion regarding Rodriguez's character and reputation is not supported by the evidence of record. Because the evidence of record does not support Sheriff's conclusion that Rodriguez has a dangerous character or reputation, Sheriff did not have "good cause" to revoke Rodriguez's firearms license. Therefore, we are constrained to reverse the trial court's decision.[4]

---

[4] While the trial court correctly notes in its opinion that because Sheriff was the issuing authority, he had the jurisdiction to revoke Rodriguez's firearms license regardless of Rodriguez's residence, we do not address this issue as it was not raised by Rodriguez on appeal. Additionally, based on our reversal of the trial court's decision, we need not address Rodriguez's third argument asserting the trial court erred when it determined that Rodriguez's resumé and gun training certificates obtained as a constable were not relevant.

For the foregoing reasons, we reverse the trial court's order upholding Sheriff's revocation of Rodriguez's firearms license.

_____
STACY WALLACE, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Manuel Rodriguez,                :
                 Appellant   :
                              :
        v.                 : No. 917 C.D. 2021
                              :
Joseph N. Hanna          :

## **O R D E R**

**AND NOW**, this 12th day of October 2022, the order of the Court of Common Pleas of Lehigh County (trial court) is **REVERSED**. This matter is **REMANDED** to the trial court with instructions to issue an order directing Sheriff Joseph N. Hanna to reinstate Manuel Rodriguez's firearms license.

Jurisdiction relinquished.

_____
STACY WALLACE, Judge